ST. IGNATIUS NURSING
HOME, Petitioner

v.

DEPARTMENT OF PUBLIC
WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 3, 2006.
Decided March 14, 2007.

---

3. Because of our determination, we need not address the remaining issues raised.

Joseph F. Murphy, Harrisburg, for petitioner.

Marisa L. Cohan, Asst. Counsel and Mary Frances Grabowski, Sr. Asst. Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

St. Ignatius Nursing Home, petitions for review of the adjudication of the Department of Public Welfare (Department) denying its appeal of the Department's audit reducing its Medical Assistance (MA) reimbursement for the period from July 1, 1995, through December 31, 1995.[1] The Department held that the salaries of four management employees, who are registered nurses, should have been reported as nursing, not administrative, costs. By reclassifying these salaries, the Department found that St. Ignatius had exceeded the maximum allowable reimbursement for nursing costs during the period in question. Concluding that the Department erred in reclassifying the salaries in question, we reverse the adjudication in this respect. We affirm the remainder of the adjudication.

St. Ignatius is a licensed nursing home located in Philadelphia and is an MA provider for the Department. In 1992, St. Ignatius replaced its "Assistant Directors of Nursing" with "Unit Managers," assigning one Manager to each floor, or unit, of the facility. As did the Assistant Directors of Nursing, the Managers supervise the licensed nurses and certified aides who provide patient care. The Manager's job description provides that this individual "is responsible for total patient care, twenty four (24) hours per day on his/her assigned unit." Reproduced Record at 237

---

1. The audit covered a short period report because the rules providing for MA reimbursement changed effective January 1, 1996.

(R.R. ——). In addition, St. Ignatius employs an individual to direct the facility's infection control program, the "Infection Control Director."[2] The Managers and the Infection Control Director are each registered nurses.

As an MA provider, St. Ignatius must file an annual cost report with the Department within 90 days of the close of its fiscal year and must use the Department's pre-printed form, known as the MA–11 report, to do so. Schedule C of the MA–11 form lists five cost centers for reporting purposes: Room and Board; Healthcare; General Administration; Other Costs; and Depreciation and Interest on Capital Indebtedness. R.R. 28. Under "Healthcare," there are ten reporting categories, including, *inter alia*, nursing, director of nursing and related clerical staff costs.[3]

On Schedule C of the MA–11 report, St. Ignatius reported the salaries of each Manager and the Infection Control Director on the line specified for "director of nursing" costs rather than on the line specified for "nursing" costs. Accordingly, their salaries were not used to calculate St. Ignatius' nursing costs. Notably, even without including the salaries of these four individuals, St. Ignatius reported that its nursing costs for the six-month period in 1995 had exceeded the maximum allowable for MA reimbursement by $139,525.

The Department's auditor reviewed the MA–11 report prepared by St. Ignatius and found it acceptable with respect to its report of nursing costs. However, the auditor's supervisor concluded otherwise. Accordingly, the Department issued an audit determining that $93,119 in costs related to the compensation of the three Managers and one Infection Control Director should have been listed on Schedule C as "nursing," not "director of nursing," costs. With this reclassification, St. Ignatius was found to have exceeded its maximum allowable costs for nursing staff hours by an additional $85,207.[4]

Another cost disallowed by the Department was $702 spent on flowers for employees who had experienced a death in the family. The Department concluded that bereavement flowers were not related to patient care and reduced St. Ignatius' allowable reimbursement costs by $614.

St. Ignatius filed a timely administrative appeal and, after a hearing, the Administrative Law Judge (ALJ) recommended that the appeal be denied. The Bureau of Hearings and Appeals adopted the ALJ's recommendation. The present petition for review followed.

■ On appeal,[5] St. Ignatius presents two issues for our consideration. First, it

**2.** The individual in this position is required to "[p]lan, develop organize, implement, evaluate, coordinate, and direct [the] Infection Control program ... [d]evelop, maintain, and periodically update infection control precautions and aseptic techniques ... [r]eview and analyze infectious disease laboratory reports and consult with the Registered Nurse Assessment Coordinator (RNAC) in developing the care plan ... and [p]rovide the Director of Nursing Services with a report of pertinent findings and recommendations pertaining to nosocomial infection." R.R. 239.

**3.** Schedule C also lists "Practitioners, Medical Director, Utilization and Medical Review, So-

cial Services, Patient Activities, Volunteer Services" and provides a blank space for other healthcare categories, which St. Ignatius filled in with "Pastoral Care." R.R. 28.

**4.** In its three prior MA–11 reports filed for June 1993, 1994 and 1995, St. Ignatius treated the salaries of the Managers and Infection Control Director as "director of nursing" costs. These MA–11 reports were audited and accepted by the Department.

**5.** In an appeal from an adjudication of the Department, we determine whether the adjudication is supported by substantial evidence, whether the decision is in accordance with

contends that the Department's adjudication is based upon a new, and incorrect, interpretation of a regulation intended to cap nursing staff hours, not administrative costs, and it lacks any foundation in the language of that regulation. If allowed, the Department will improperly effect a new regulation by interpretation rather than by rulemaking. Second, St. Ignatius contends the purchase of bereavement flowers for employees was necessary; was related to patient care; and should be considered a reimbursable cost of the facility.

We address, first, the claim of St. Ignatius that the Department's treatment of the salaries of persons who supervise nurses, but do not provide direct patient care, was incorrect. St. Ignatius contends that the Department's cap on nursing costs has always been tied to the Pennsylvania Department of Health requirements for a licensed nursing home facility. Because the hours spent supervising nurses do not satisfy the Department of Health's standards for minimum nursing staff hours per patient, "supervising" is not "nursing" and must be treated separately in the MA–11 annual report.

The Department counters that as the agency charged with determining what can be reimbursed to an MA provider, its reimbursement determination with respect to St. Ignatius must be afforded controlling weight unless it is plainly erroneous and inconsistent with the applicable regulation. It contends that the Department of Health's standard for the minimum number of "nursing hours" that must be given to each patient is irrelevant. Further, it claims that the instructions on the MA–11 report direct that the salaries of *all nurses*, including those in administration, must be reported as nursing costs.

We begin with a review of the Department regulations found at 55 Pa.Code §§ 1181.1–1189.274, which provide the standards for reimbursement of an MA provider's costs.[6] Only those "[c]osts which are necessary and reasonable to the proper care of Medical Assistance patients and which are identified in this subchapter" are "allowable costs." 55 Pa.Code. § 1181.202. "[A]llowable costs include those costs necessary to provide skilled or intermediate care ... [and] may include costs related to ... (5)[N]ursing [and] (6) Director of nursing." 55 Pa.Code § 1181.212(c). The regulation caps the maximum allowance for nursing costs as follows:

(a) Except for special rehabilitation facilities, the *allowable costs recognized for Medical Assistance may not exceed 3 nursing hours per patient per day for skilled nursing care and 2.6 nursing hours per patient per day for intermediate care.*

the applicable law, or whether constitutional rights were violated. *Cambria County Home and Hospital v. Department of Public Welfare*, 907 A.2d 661, 667 (Pa.Cmwlth.2006).

6. The cost-based regulations provide in relevant part:
(a) The facility shall identify for cost finding allowable direct, indirect, ancillary and related organization costs that apply to patient care for each certified level of care.
(b) The facility shall submit a cost report (Financial and Statistical Report, MA–11) to the Department in accordance with Departmental requirements. The cost report shall be based on financial and statistical records maintained by the facility. The cost information contained in the cost report and in the facility's records shall be current, accurate, and in sufficient detail to support the claim for cost reimbursement. The Financial and Statistical Report (MA–11) outlines the expenses and revenues to be included in the cost report for MA.
55 Pa.Code § 1181.213.

(b) For special rehabilitation facilities, the allowable costs recognized for Medical Assistance may not exceed 3.75 nursing hours per patient per day for skilled nursing care and 3.2 nursing hours per patient per day for intermediate care.

(c) Allowable nursing hours are calculated in accordance with the instructions of the Department's *preprinted cost report.*

55 Pa.Code § 1181.242 (emphasis added). The "preprinted cost report," the MA–11 report, repeats the cap found in 55 Pa. Code § 1181.242(a). It states:

1. Nursing Staffing: *Total nursing salaries* may not be more than 3.0 hours per skilled patient and 2.6 hours per intermediate care patient.

R.R. 81a (emphasis added).

St. Ignatius reported the salaries of its Managers and Infection Control Director as "director of nursing" costs on line 8 of Schedule C on the MA–11 report, as it had done on its previous reports filed for the fiscal years ending in June 1993, 1994 and 1995. It did not report these salaries as "nursing" costs on line 7 of Schedule C for several reasons.

First, the instructions to Schedule C of the MA–11 report identify "nursing" costs to be reported on line 7 as follows:

Salaries, wages, and fringe benefits of nurses, aides, orderlies; contracted nursing services; nursing supplies not chargeable to patients such as dressings, thermometers, etc.

R.R. 1263. "Nursing" costs are not just salaries; they include supplies used in nursing care. Where Schedule C does list salaries to be included, it does not list the salaries of nursing supervisors. It does include salaries of persons, such as orderlies, who are not registered nurses. Schedule C directs that "[s]alary and fringe benefits of the director of nursing" be reported on line 8 of Schedule C as "director of nursing costs," except where the director "also routinely provides patient care, whereupon the salary should be included with Nursing." *Id.*

Second, Schedule H, where allowable "nursing" costs are calculated, does not instruct that lines 7 and 8 on Schedule C are to be used together. To the contrary, it directs that the hours of a director of nursing be excluded, unless that individual spends more than 50% of his time attending to patients, rather than administration. This directive is evidenced in its instructions on "floor hours" that state as follows:

[T]he actual floor hours worked. Floor hours represent all *actual hours that nursing care* was provided, including nursing labor pools and overtime hours at straight time. The hours should generally exclude paid sick and vacation hours. *In addition, unless the director of nursing regularly spends a majority of the week attending to patient needs rather than administrative procedures,* those hours should be excluded.

R.R. 81 (emphasis added). In sum, 55 Pa.Code § 1181.242(a) and the MA–11 report itself teach that "nursing" costs are those that relate to direct patient care.

At the hearing, Ian Cohen, the Department employee who is responsible for auditing MA nursing home rates, explained the Department's contrary position. He testified that the Department interprets "nursing" to cover any task done by a nurse, and this is the meaning of the reference to "total nursing salaries" on Schedule H. He conceded a "director of nursing" salary is not a "nursing" cost, but he rejoined that Managers and the Infection Control Director are "not director[s] of nursing." R.R. 961. Mr. Cohen's conclusion appeared to be based upon the title of those individual employees as opposed to

their functions or whether those functions were the same as those of their predecessors, *i.e.*, the assistant directors of nursing. In his opinion, making staff assignments, doing personnel evaluations and disciplining employees constitute "nursing" because these activities indirectly affect patient care. R.R. 1451–1452. Thus, Mr. Cohen contended that where the MA–11 instructs the inclusion of "all nursing salaries" in the Schedule H calculation of maximum allowable nursing costs, this means the "salaries of *all nurses*." Notably, Mr. Cohen could not explain why the salary of the St. Ignatius "Registered Nurse Assessment Coordinator," a registered nurse who is responsible for patient assessment at admission and for developing that patient's plan of care, was properly counted as a "director of nursing" cost, as opposed to a "nursing" cost.[7]

Raymond Keefe, the certified public accountant who prepared St. Ignatius' MA–11 report as of December 31, 1995, testified. He explained that prior to 1992, the persons now holding the title "Manager" then held the title "Assistant Director of Nursing." Their salaries were always reported as "director of nursing" costs, and this reporting treatment had always been accepted by the Department. Managers do not work "floor hours," as that term is

used on Schedule H because they do not provide direct "nursing care." R.R. 81. Schedule H specifically provides that unless a director of nursing spends the majority of his or her week "attending to patient needs rather than administrative procedures, those hours should be excluded." R.R. 81. In Mr. Keefe's view, the preprinted report form was clear on this point.

Mr. Keefe's view was confirmed by the testimony of Marianna Hall, a former employee of the Department of Health, responsible for compliance surveys of nursing homes during the audit period in question. The Department of Health regulates quality of care in nursing homes, and its regulation states as follows:

A minimum number of general nursing care hours shall be provided for each 24–hour period. The total number of hours of general nursing care provided in each 24–hour period shall, when totaled for the entire facility, be *a minimum of 2.7 hours of direct resident care* for each resident.

28 Pa.Code § 211.12(I)(emphasis added).[8] Because the Infection Control Director and Managers do not provide direct, "hands on" nursing care to patients, Ms. Hall maintained the Health Department would not accept their hours as satisfying

---

7. Mr. Cohen could not explain why the Department's audit found the MA–11 reports filed by St. Ignatius in June 1993, 1994 and 1995 to be correct. He believed the Department made a mistake and that St. Ignatius was "lucky." R.R. 968–969.

8. The prior version of 28 Pa.Code § 211.12(n), adopted August 29, 1975, 5 Pa. B. 2333, read as follows:

A *minimum number of general nursing care hours shall be provided for each 24–hour period.* The total number of hours of *general nursing care provided in each 24–hour period shall, when totaled for the entire facility, be a minimum of 2.7 hours of direct patient care for each skilled care patient and*

*a minimum of 2.3 hours of direct patient care* for each intermediate care patient. The total number of daily required hours shall be computed by multiplying the number of intermediate care patients by 2.3 hours and multiplying the number of skilled care patients by 2.7 hours. The two figures shall be added; the sum shall be the minimum total number of hours of general nursing provided in each 24–hour period for the entire facility.

28 Pa.Code § 211.12(n) (emphasis added). This subsection was amended in 1987, changing the subsection designation from (n) to (13). 17 Pa. B. 540.

the regulation at 28 Pa.Code § 212.12(I). R.R. 1406.

█ We conclude that St. Ignatius properly excluded the salaries of the Managers and Infection Control Director from its calculation of nursing costs. We do so because, as set forth below, neither the Department's regulation nor the instructions on its MA–11 report support any other accounting treatment of these salaries.

We begin with the Department's regulation on maximum nursing costs allowable for reimbursement. In 1983, the Department adopted Chapter 1181 of Title 55, which codified its prior cost standards,[9] as follows:

From January 8, 1983 through December 31, 1983, the allowable costs recognized for Medical Assistance may not exceed, by more than 20%, 2.5 nursing hours for skilled nursing care; the allowable costs recognized for Medical Assistance may not exceed by more than 20%, 2.0 nursing hours for intermediate care. (Nursing hours are calculated in accordance with the Department's pre-printed cost report). Beginning January 1, 1984, the *allowable costs recognized for Medical Assistance may not exceed by more than 20% the minimum*

*staffing standards for nursing personnel* specified in 28 Pa.Code Chapters 211–215 (relating to long term care facilities).

55 Pa.Code § 1181.242; 13 Pa. B. 2413 (emphasis added).

In 1986, the current version of 55 Pa. Code § 1181.242 was adopted, and it no longer contains a direct reference to the Department of Health's regulation at Title 28 of the Pennsylvania Code. However, this deletion did not initiate a substantive change. The Department's own comments about the 1986 revision explain that nursing costs are those incurred to satisfy the minimum required by the Department of Health. These comments state:

The Department of Health licensure regulations require, at a minimum, that 2.5 nursing hours of care per day be provided to a skilled care patient and 2.0 nursing hours of care per day be provided to an intermediate care patient. Therefore, considering the 20% override, the Department recognizes as allowable a maximum of 3.0 nursing hours per day for skilled care and 2.4 nursing hours per day for intermediate care, to the extent that the additional hours of care are actually provided.[10]

---

9. Since 1975, the Department's "Manual for Allowable Costs for Skilled Nursing and Intermediate Facilities" (Manual) had stated as follows:

*Minimum staffing standards for classes of nursing personnel are specified in the Department of Health's Long Term Care Facility Standards and Regulations for Skilled Nursing Facilities and Intermediate Care Facilities. The allowable costs incurred and recognized for Medical Assistance may not exceed by more than 20% the minimum staffing standards for nursing personnel specified in these rules and regulations.*

5 Pa. B. 2928 (1975) (emphasis added); R.R. 1248.

10. The remaining comments were as follows:

Revisions were made to §§ 1181.2 and 1181.242 (relating to definitions and nursing staff allowance) to clarify the allowable nursing staff allowance for special rehabilitation facilities. Under current regulation, special rehabilitation facilities are defined as skilled and intermediate care facilities that provide services to patients who have physical disabilities to the extent that these patients require facility staffing of 50% more than the minimum levels specified in the Department of Health's Long Term Care Facilities Licensure Regulations. The changes remove the arithmetical formula for calculating the allowable nursing hours for special rehabilitation facilities. As a result of this change, these facilities may receive the benefit of having an additional

16 Pa. B. 3294; R.R. 1249. Thus, the 20% formula was eliminated and replaced with a fixed number of allowable nursing hours for each level of care; however, the meaning of what constitutes nursing costs remained unchanged. We reject the Department's premise that the Department of Health's requirements for nursing care are irrelevant. If this were true, the Department would not have continued to reference the 20% formula on Schedule H of the MA–11 preprinted report. R.R. 82.

We also reject the Department's argument that instructions on the MA–11 report resolve the question of how to report the salaries of the Managers and the Infection Control Director in favor of the Department. Even Mr. Cohen conceded that "director of nursing" costs and "nursing" costs are different costs. There is no reason to distinguish them on Schedule C if they are to be aggregated on Schedule H. The Department's contention that "all nursing salaries," as it appears in the instructions to Schedule H of the MA–11 report, means "all salaries of nurses" is insupportable.

■ The dispositive question is how to interpret the term "nursing."[11] Where a term is not defined, we are instructed that "[w]ords and phrases shall be construed according to rules of grammar and accord-

ing to their common and approved usage." 1 Pa.C.S. § 1903(a). Moreover, in ascertaining the common and approved usage or meaning of a word, we may resort to the dictionary. *See, e.g., P.R. v. Pennsylvania Department of Public Welfare*, 759 A.2d 434, 437 (Pa.Cmwlth.2000). Webster's New Collegiate Dictionary II, 751 (1995), defines the term "nursing" as follows: *"[t]o serve as a nurse;* ... [t]o try to cure or treat ... [t]o take special care." (emphasis added). In sum, "nursing" is the act of providing direct patient care.

Here, there is no dispute that the Managers and Infection Control Director do not take care of patients. The ALJ specifically found that these persons do not take care of patients, stating:

> [M]anagers are responsible for supervising the patient care staff ... They do not regularly provide 'direct, hands on' patient care except in 'emergencies' or on rare occasions 'if a nurse needs assistance,' estimated to be 1% of their time.

Finding of Fact, ¶ 29; R.R. 1272. (citations omitted). The Department argues that supervising nursing personnel and developing infection control programs constitute "nursing" because they affect patient care. This is a *reducio ad absurdum* because everything done at St. Ignatius affects patient care.[12] Further, it cannot be recon-

---

0.2 hours of care per day recognized as allowable for their intermediate care patients.
16 Pa. B. 3294–3295. The change was, if anything, to benefit nursing home MA providers.

**11.** We are mindful that the Department's interpretation of what constitutes a reimbursable expense is to be given controlling weight unless it is plainly erroneous or inconsistent with the Department's regulations or the underlying statute. *Cambria County Home and Hospital v. Department of Public Welfare*, 907 A.2d 661, 667 (Pa.Cmwlth.2006). We conclude that the Department's newfound interpretation of the term "nursing hours

per patient" to include the hours of any nurse employed in the facility, even one who performs supervisory or administrative duties, is erroneous and not consistent with the regulation. Accordingly, it is not entitled to deference.

**12.** Mr. Cohen relied heavily on the fact that Managers are located "on the floor" and have "ultimate responsibility" for patient welfare. First, the location of the supervisor's office is irrelevant. The relevant question is whether the supervisor is providing direct patient care. Second, everyone in a management level position at St. Ignatius, whether or not that person is a healthcare professional, has "ultimate

ciled with the MA–11 report, which categorizes ten different healthcare costs by function performed, not by degree of the employee. Under the Department's theory, a registered nurse who decides to accept a clerical position at St. Ignatius would be assigned to a "nursing" cost simply because of his or her professional degree. Finally, the Department's argument does not square with its own practices because the Department agreed that the salary of the Registered Nurse Assessment Coordinator, a registered nurse who provides "individual patient assessment" upon admission, was not a "nursing" cost.

■ The Department's standard for determining allowable nursing costs has always been based upon the minimum hours of direct nursing care required by the Department of Health to be spent on direct patient care. When the 20% formula was replaced with a fixed number of hours per patient, the Department did not also state, either in the text of the regulation or in its explanatory comments, that administrative hours were to be included in those hours.[13] Further, the Department did not revise its use of the term "nursing hours," which is critical in determining the maximum allowable expense reimbursement. Where a term is continued to be used in an amendment to a regulation or statute, the presumption is that the term carries the same meaning as before. *Commonwealth v. Sitkin's Junk Co.* 412 Pa. 132, 137, 194 A.2d 199, 202 (1963).

In sum, if the Department had intended 55 Pa.Code § 1181.242 to cap the costs of administrative nursing costs, it should have so stated. It could have defined the difference between "nursing" and "director

of nursing" costs, but it did not. It cannot do through interpretation that which it failed to do through rulemaking. We hold that the Department erred in finding that the salaries of the Managers and Infection Control Director should have been included as "nursing" costs on Schedule H. St. Ignatius properly reported them as "director of nursing" costs.

■ We turn next to St. Ignatius contention that its purchase of bereavement flowers for nursing facility employees is necessary and related to the proper care of nursing home facility residents. It contends that flowers sent to employees are related to patient care because they assist in staff morale and employee retention. In this regard, St. Ignatius relies on *Mercy–Douglass Center, Inc. v. Department of Public Welfare,* 144 Pa.Cmwlth. 451, 601 A.2d 913, 916 (1992).

In *Mercy–Douglass,* an MA nursing home provider appealed the Department's disallowance of reimbursement for the cost of directors' and officers' liability insurance. This Court found the disallowance unreasonable because under the Department's Provider Reimbursement Manual, the purchase of such coverage was a common and accepted expense for nursing homes. Such liability coverage is encouraged by the Pennsylvania Non–Profit Corporation Law, 15 Pa.C.S. §§ 5741–5747, and its purchase was considered an allowable cost under the Department's regulations.

Here, we find no such support in statute or regulation. There is no specific category of allowed expenses for staff morale in Chapter 1181 of Title 55 of the Pennsylvania Code, nor is there any evi-

---

responsibility" for patient care because that is the business of St. Ignatius.

**13.** Indeed, this formula continued to appear on Schedule H of the MA–11 report; the

purpose of the Schedule H computation is to determine "nursing staffing 20% in excess of minimum." R.R. 82.

dence that these expenditures are a common and accepted expense in the field. The Department did not err in disallowing this expenditure because "expenses ... not necessary to patient care" are not considered as allowable costs. 55 Pa.Code § 1181.271(25).[14]

Accordingly, we affirm in part and reverse in part. We hold that only the salaries of nurses who are directly involved with patient care are to be included in the calculation of nursing costs. The salaries of nurses who perform administrative or supervisory tasks, without direct patient interaction or care, are to be excluded. The cost of bereavement flowers for employees of a nursing home are also properly excluded.

## ORDER

AND NOW, this 14th day of March, 2007, the order of the Pennsylvania Department of Public Welfare, dated February 17, 2006, is hereby affirmed in part and reversed in part, in accordance with the attached opinion.

---

14. In this regard, St. Ignatius is as guilty as the Department in falling for the logical fallacy that anything and everything affects patient care and must, therefore, be considered a reimbursable cost.