# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nolan Finnerty,                  :
             Petitioner       :
                             :
                             :
           v.                   :    No. 1090 C.D. 2018
                             :    Argued: March 14, 2019
Pennsylvania Department of     :
Community and Economic       :
Development,                  :
             Respondent    :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED: April 25, 2019**


Nolan Finnerty (Requester) petitions for review of a Final Determination of the Office of Open Records (OOR) issued July 11, 2018, denying in part his appeal of the Pennsylvania Department of Community and Economic Development's (Department) partial denial of his request for records under the Right-to-Know Law (RTKL).[1] Requester argues that OOR erred when it determined that the Department properly invoked the internal, predecisional deliberation exception as to certain records because those records were not internal to the Department but

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

were shared with subcontractors of the Department. For the reasons set forth in *Finnerty v. Pennsylvania Department of Community and Economic Development*, __ A.3d __, (Pa. Cmwlth., No. 801 C.D. 2018, filed April 25, 2019) (*Finnerty I*),[2] we disagree and conclude that these records remained "internal to the agency" because the records were exchanged between the Department and outside contractors with whom the Department had a contractual relationship to assist it in bringing the City of Chester (the City) out of financially distressed status. *McGowan v. Pa. Dep't of Envtl. Prot.*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014).

Requester also challenges the Department's withholding of certain records under the privilege of attorney-client communications and, relatedly, the attorney work-product doctrine. However, at oral argument, the Department's Counsel represented, and Requester's Counsel agreed, that the records withheld as privileged attorney-client communications and under the attorney work-product doctrine had been disclosed to Requester. Therefore, we conclude that, as a result of that disclosure, Requester's challenges based on the attorney-client communications privilege and attorney work-product doctrine have been rendered moot, and none of the exceptions to the mootness doctrine apply.

## I.     Factual Background

Since 1996, pursuant to the Municipalities Financial Recovery Act[3] (Act 47), the City has been determined to be a financially distressed municipality. Under Section 221 of Act 47, 53 P.S. § 11701.221, the Department is authorized to appoint and compensate a consultant who will act as a coordinator in preparing and

---

[2] *Finnerty I* was argued seriately with this case.

[3] Act of July 10, 1987, P.L. 246, *as amended*, 53 P.S. §§ 11701.101-11701.712.

2

addressing the municipality's financial problems. In February 2016, following a request for proposals (RFP), the Department entered into a contract (Contract) with EConsult Solutions Inc. (EConsult) to act as the Act 47 Coordinator for the City. (Reproduced Record (R.R.) at 181a-215a.) At the time of the Contract, EConsult had been serving as the Act 47 Coordinator for the City since September 2015 under a contract with the Department. (*Id.* at 364a.) Under the terms of the RFP, which were incorporated into the Contract, EConsult was responsible for implementing the Recovery Plan for the City, working closely with municipal officials, maintaining close contact with the Department and providing the Department with progress reports regarding the Recovery Plan implementation, consulting with employee collective bargaining groups, attending meetings as directed by the Department and requested by the City, consulting with state and federal agencies as necessary, and applying for grants as provided by Act 47. (*Id.* at 209a.) In Article XIII of the Contract, EConsult promised not to enter into any subcontract for the activities identified in the Contract without the prior written approval of the Department. (*Id.* at 200a.) Appended to the Contract was a budget, which allotted payment to Fairmount Capital Advisors (Fairmount), as a financial consultant, and McNees, Wallace and Nurick (McNees), as legal counsel, for subcontract work they were to perform related to EConsult's activities as Act 47 Coordinator. (*Id.* at 214a, 224a.) The budget stated that Fairmount and McNees would bill hourly through EConsult. (*Id.*)

### A. The Request under the RTKL and the Department's Responses

On November 28, 2017, the Department received, via email, a request from Requester, a paralegal with the law firm of Conrad O'Brien, P.C., under the RTKL.

The request consisted of 25 subparts and requested, *inter alia*, copies of specific records, including documents exchanged between and among the Department, the City, EConsult, McNees, and Fairmount discussing the City and the Chester Water Authority (CWA).[4]  (*Id.* at 9a-10a.)

---

[4] Specifically, the request, as relevant to this appeal, was as follows:

1.    Copies of all communications, including letters and emails, between [the Department] and any Chester City Officials . . . from July 1, 2015 to the present.

2.    Copies of all communications, including letters, reports, memoranda, and emails, between McNees . . . and any Chester City Officials . . . from July 1, 2015 to the present.

3.    Copies of all communications, including letters, reports, memoranda, and emails, between E[C]onsult . . . and/or Fairmount . . . and any Chester City Officials . . .  from July 1, 2015 to the present.

4.    Copies of all communications, including letters, reports, memoranda, and emails, between the [Department] and [another law firm] discussing the City of Chester and/or the [CWA] from July 1, 2015 to the present.

5.    Copies of all communications, including letters, reports, memoranda, and emails, directly or indirectly exchanged between the [Department] and Steven W. Smith, Esquire discussing the City . . . and/or the [CWA] from July 1, 2015 to the present.

***

9.    Copies of all communications, including letters and emails, between [the Department] and David Unkovic, Esquire discussing the City . . . and/or the [CWA] from July 1, 2015 to the present.

10.  Copies of all communications, including letters, reports, memoranda, and emails, between Marita Kelly and/or Jamar Kelly and David Unkovic, Esquire discussing the City . . . and/or the [CWA] from July 1, 2015 to the present.

11.  Copies of all communications, including letters, reports, memoranda, and emails, between [the Department] and Adam Santucci, Esquire discussing the City . . . and/or the [CWA] from July 1, 2015 to the present.

12.  Copies of all communications, including letters, reports, memoranda, and emails, between Marita Kelly and/or Jamar Kelly and Adam Santucci, Esquire discussing the City . . . and/or the [CWA] from July 1, 2015 to the present.

**(Footnote continued on next page…)**

4

(continued…)

13. Copies of all communications, including letters, reports, memoranda, and emails, between [the Department] and Brooke Queenan discussing the City . . . and/or the [CWA] from July 1, 2015 to the present.

14. Copies of all communications, including letters, reports, memoranda, and emails, between Marita Kelly and/or Jamar Kelly and Brooke Queenan discussing the City . . . and/or the [CWA] from July 1, 2015 to the present.

15. Copies of all communications, including letters, reports, memoranda, and emails, between [the Department] and Stephen Mullin discussing the City . . . and/or the [CWA] from July 1, 2015 to the present.

16. Copies of all communications, including letters, reports, memoranda, and emails, between Marita Kelly and/or Jamar Kelly and Stephen Mullin discussing the City . . . and/or the [CWA] from July 1, 2015 to the present.

17. Copies of all communications, including letters, reports, memoranda, and emails, between [the Department] and Andrea Mannino discussing the City . . . and/or the [CWA] from July 1, 2015 to the present.

18. Copies of all communications, including letters, reports, memoranda, and emails, between Marita Kelly and/or Jamar Kelly and Andrea Mannino discussing the City . . . and/or the [CWA] from July 1, 2015 to the present.

19. Copies of all communications, including letters, reports, memoranda, and emails, between [the Department] and Daniel Connelly discussing the City . . . and/or the [CWA] from July 1, 2015 to the present.

20. Copies of all communications, including letters, reports, memoranda, and emails, between Marita Kelly and/or Jamar Kelly and Daniel Connelly discussing the City . . . and/or the [CWA] from July 1, 2015 to the present.

21. A copy of any report or analysis related to any potential monetization of the [CWA].

22. Copies of minutes from any meetings related to the City . . . since July 1, 2015.

23. Copies of notes taken, memoranda prepared, or agendas in connection with any meetings related to the City . . . since July 1, 2015.

24 Copies of all communications, including letters, reports, memoranda, agendas, and emails, related to the City['s] . . . Act 47 Recovery Coordinator's report setting forth the financial condition of the City . . . and the Recovery Coordinator's recommendation since July 1, 2015.

25. Copies of all communications, including letters, reports, memoranda, notes, and emails between [the Department], E[C]onsult . . ., McNees . . . and/or Fairmount . . . and the auditor general regarding the City . . . and[/]or the [CWA] since July 1, 2015.

(R.R. at 9a-11a.)

5

Following statutorily invoked and agreed-upon extensions for responding, the Department issued its response, denying the request, in part, on the ground that certain requested records, as pertinent to the issues raised on appeal, constituted internal, predecisional deliberations, consisting of "internal staff and contractor recommendations, comments to letters, reports and presentations, negotiation strategy, projections of cash flow, draft policy and budget proposals, that played a role in the Department's Act 47 decision making process." (*Id.* at 18a-19a.) Specifically, as Jennifer Fogarty, the Open Records Officer for the Department later affirmed (Fogarty Affirmation), the Department withheld the following records:

> [The Department] redacted portions of several emails between the Act 47 Team and [the Department] that reflect impressions, recommendations, and proposals related to the City's proposed budget, addressing issues of debt service priorities, pension payments, debt financing and refinancing strategy, revenue sources, and labor negotiations and labor issues prior to a final decision of how to advise City Officials. These portions of records were redacted under the internal predecisional deliberation exemption . . . because they reflect [the Department's] communications with its contractor and their counsel addressing budget recommendations.

> [The Department] redacted portions of several email records between E[C]onsult staff, [the Department] staff, McNees attorneys, and the City's Chief Financial Officer as internal predecisional deliberation of [the Department] staff with a City Official. The redacted text reflects City budget recommendations and impressions relating to City staffing, debt service payments, pension payments, and other issues related to achieving a balanced budget. These communications reflect the internal predecisional deliberations between the staff of one agency with the staff of another agency . . . .

> [The Department] redacted certain portions of emails between E[C]onsult staff and McNees attorneys that request legal analysis and/or advice or that consist of McNees's legal advice and impressions . . . . Some of the redacted emails of McNees' responses

6

. . . [are] also exempt as predecisional agency deliberations with its counsel because the advice relates to subject matter for which McNees was hired under the City Act 47 contract.

***

[The Department] withheld a series of 346 pages of emails exchanged between the Act 47 Coordinator Team, City Officials, the City Solicitor, the City Financial Advisor, [the Department], underwriter's counsel, bond counsel and other professionals necessary to the bond transaction dated between June 2017 and late August 2017, leading up to and relating to a City August 2017 bond issuance. The withheld records reflect the confidential impressions, recommendations, draft notices, disclosure documents, ordinances and term sheets, comments to draft documents, financing strategy, and proposals related to an upcoming bond transaction exchanged between the City's financial advisor, [the Department] staff, E[C]onsult, the Act 47 Coordinator, McNees counsel, City Officials, the City's solicitors, the City's financial advisor, bond counsel, and other professionals necessary to the closing of the transaction. These communications were internal to the bond transaction group and predecisional to the bond issuance . . . .

[The Department] did not provide an attachment from an email dated November 22, 2017, sent by . . . a McNees attorney, to [the Department] staff and Act 47 Coordinator staff . . . . [The Department] did not provide the attachment based on [the] internal predecisional communications exemption . . . .

***

Requiring [the Department] to release the redacted portions of sensitive records as outlined above would severely compromise [the Department's] ability to assist distressed cities with their fiscal problems under Act 47, by making it less likely that such information will be provided to [the Department]. [The Department] must have the ability to redact internal predecisional communications . . . it receives related to the City's fiscal condition for [the Department] to be an effective partner with E[C]onsult, the Act 47 Coordinator, in providing sound advice to City Officials.

(*Id.* at 69a-71a.)[5]

---

[5] The Department later produced a privilege index identifying, as relevant to this appeal, the following records or portions thereof which it withheld: Bates No. 100002, 100006, 100014, 100016-18, 100023-30, 100032-39, 100045, 100047, 100049-52, 100054-70, 100072-85, **(Footnote continued on next page…)**

7

### B.    Requester's Appeal to OOR

Requester filed an appeal under the RTKL with OOR, arguing that the Department had not provided sufficient information to meet its burden of showing that the records were exempt from disclosure. (*Id.* at 4a-5a.) In response, the Department submitted the Fogarty Affirmation, recounted above. Requester then submitted a memorandum of law arguing that the internal, predecisional deliberation exception did not apply because the withheld records were not maintained internally to one agency or among several agencies, but were "shared by and between the Department, EConsult, McNees, and Fairmount . . . , the City . . . and/or unexplained third parties." (*Id.* at 84a.) Records that were shared or maintained externally had to be disclosed.

The OOR Appeals Officer (Appeals Officer) requested supplemental submissions addressing, *inter alia*, the issue of whether records created or received by third-party subcontractors were internal to the agency. (*Id.* at 290a.)

The Department argued that the internal, predecisional deliberation exception applied because the withheld records involved the Department's communications with both EConsult and McNees and were generated at the Department's express direction for the purpose of discussing, studying, and weighing various approaches to the challenges facing the City. (*Id.* at 359a.)

In further support, the Department offered affidavits from Adam L. Santucci, an attorney and member with McNees, and Stephen Mullin, the President and Principal of EConsult, which were almost identical. Santucci and Mullin stated

_____

(continued…)

100089-104, 100107-22, 100124, 100126-46, 100160-64, 100166-68, 100172, 200006, 200024-25, 200028-30, 200032-43, 200045-47, 200185-228, 200242-44, 200246-51, 200291, 200293-300, 200305-06. (Exemption Index, R.R. at 296a-300a; Final Determination at 18-20.)

8

that when the RFP was issued, EConsult and Fairmount "invited McNees to contribute to a joint response to the RFP, whereby McNees would provide the necessary legal experience." (*Id.* at 362a, 366a.) With McNees part of the Act 47 Coordinator team, "it was believed that a full-service Recovery Coordinator would be created to provide all aspects of municipal finance, public policy, legal counsel and economic development consultation throughout the implementation of the recovery plan." (*Id.*) McNees' role was to advise the Department on the Recovery Plan's compliance with Act 47, providing "guidance, legal advice, legal strategy and recommendations to EConsult and Fairmount," which are the Department's agents, so that the Department could help the City implement the Recovery Plan and exit its financially distressed municipality status. (*Id.*) In particular, McNees was expected first to consult with EConsult and Fairmount in order to identify and recommend legal options for reducing the past and future liability of the City. In addition, McNees was to evaluate recommendations from other members of the Act 47 team to ensure they complied with the law. In other words, legal and financial matters were intertwined. In order to make recommendations and analyze the recommendations of others, McNees had to "obtain and consider feedback from EConsult, Fairmount," and the Department. (*Id.*)

In a supplemental memorandum of law, Requester argued that records shared by an agency with its contractors, subcontractors, third parties, or consultants were not internal to the agency. (*Id.* at 371a.) Requester argued that the internal element of the exception was not satisfied based on an agency relationship because EConsult and Fairmount were not agents of the Department. Requester asserted that the Department and EConsult have divergent interests, and that the Contract expressly disclaimed any agency relationship between the

9

Department and EConsult. (*Id.* at 372a.) Therefore, there was no basis "to include either E[C]onsult or Fairmount . . . within the . . . internal designation" of the exception. (*Id.* at 374a.)

At OOR's request, the Department provided a supplemental attestation identifying individuals copied on records submitted for OOR's in camera review including financial professionals and their attorneys who had "no contract with [the Department] or Act 47 Coordinator." (*Id.* at 429a-32a.)

### C.    OOR's Final Determination

OOR, citing its own case law that records shared by an agency with those it has a contractual relationship are internal to the agency, concluded that records "exchanged by various Department and City officials, the Act 47 Coordinator Team, and legal and financial experts contracted to assist with the City's Act 47 plan" were considered internal. (Final Determination at 16, 20.) This included "consultants and contractors retained to provide professional legal and financial services in furtherance of the City's Recovery Plan." (*Id.* at 20.) However, OOR concluded that any records shared with the individuals identified in the Department's supplemental attestation that did not have a contractual relationship with the Department, such as "various banking and bond professionals, as well as other 'outside financial accounts, auditors, and asset managers,'" were not considered internal. (*Id.* at 21 (footnotes omitted).)

Requester now petitions this Court for review.[6]

---

[6] Our standard of review of a final determination of OOR under the RTKL is de novo, while our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013). "[W]e may substitute our own findings of facts for that of the agency or rely upon the record created below." *Pa. State Police v. Muller*, 124 A.3d 761, 763 n.2 (Pa. Cmwlth. 2015).

## II. Appeal to this Court

As in *Finnerty I*, Requester argues that OOR erred in concluding that the Department properly invoked the internal, predecisional deliberation exception because records shared with outside contractors cannot be considered internal to the agency. Requester notes that the RTKL "is silent as to contractors of a non-agency in a manner similar to the relationship between McNees and Fairmount . . . to E[C]onsult," but that because exceptions under the RTKL should be interpreted narrowly, internal records should be limited to records shared within the agency or among several agencies. (Requester's Brief (Br.) at 26.) Further, OOR's own case law that considers records shared where there is a contractual relationship between the agency and a contractor is inapposite as McNees and Fairmount were EConsult's contractors, not the Department's. While the internal, predecisional deliberation exception has been extended to agents of the agency, "OOR did not and could not conclude that E[C]onsult, McNees and/or Fairmount . . . were agents of the Department." (*Id.* at 28.) Rather, EConsult is an independent contractor of the Department, while McNees and Fairmount have some "unknown and unclear" relationship with EConsult. (*Id.*) As such, Requester asserts that OOR erred in insulating the withheld records from disclosure under the internal, predecisional deliberation exception.

The Department argues that records are internal if the agency has a contractual relationship with the party with whom communications are shared. The Department asserts that a contractual relationship exists between it, EConsult, Fairmount, and McNees, as they are all bound by the Contract, which obliges them to assist the Department with the financial and legal aspects of the Recovery Plan. It would serve no compelling public interest and undermine the purpose of the

11

internal, predecisional deliberation exception to require disclosure of records shared between an agency, a contractor, and an essential subcontractor. Therefore, the Department argues OOR correctly concluded that the Department properly invoked the internal, predecisional deliberation exception.[7]

For the reasons we articulated in *Finnerty I*, we conclude that OOR correctly determined that the Department properly invoked the internal, predecisional deliberation exception to the withheld records. *Finnerty I*, __ A.3d at __, slip. op. at 13-19. The evidence established that there was a contract between the Department, EConsult, McNees, and Fairmount. The Department engaged EConsult, McNees, and Fairmount, pursuant to Act 47, to assist the Department in implementing the Recovery Plan to relieve the distressed status of the City. The withheld records contain communications between Department, EConsult, McNees, and Fairmount that were internal to the Department, and Requester does not otherwise challenge those communications as either not deliberative or predecisional. As such, the Department satisfied its burden of proof on the internal, predecisional deliberation exception to the withheld records and thus, we affirm OOR's Final Determination concluding that the Department properly invoked the internal, predecisional deliberation exception to the withheld records.

---

[7] In Requester's reply brief, he argues that the internal, predecisional deliberation exception does not apply to "[a]ny records shared between McNees, Fairmount . . ., E[C]onsult, the City officials, [and] the City's financial advisor and/or solicitor" because those records "are not 'internal' to the Department." (Requester's Reply Br. at 8.) Because this issue is raised for the first time in Requester's reply brief, it is waived. *Karkalas v. Dep't of State, Bureau of Prof'l & Occupational Affairs*, 71 A.3d 395, 398 n.8 (Pa. Cmwlth. 2013).

## III. Conclusion

For the foregoing reasons, we affirm the Final Determination of OOR concluding that the Department properly invoked the internal, predecisional deliberation exception to the withheld records.

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nolan Finnerty,                               :
                          Petitioner          :
                                              :
                                              :
                                              :
                          v.                  :      No. 1090 C.D. 2018
                                              :
Pennsylvania Department of                    :
Community and Economic                        :
Development,                                  :
                          Respondent          :

# **O R D E R**

**NOW**, April 25, 2019, the Final Determination of the Office of Open Records issued July 11, 2018, holding that the Pennsylvania Department of Community and Economic Development properly invoked the internal, predecisional exception is **AFFIRMED**. The remainder of Nolan Finnerty's petition for review is **DISMISSED AS MOOT.**

_____
**RENÉE COHN JUBELIRER,** Judge